NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0045-24

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

THOMAS J. FOX
a/k/a THOMAS J. FOX III
and THOMAS J. FOX JR.,

     Defendant-Appellant.

_____

Argued May 20, 2026 – Decided August 3, 2026

Before Judges Gummer, Paganelli, and Jacobs.

On appeal from the Superior Court of New Jersey,
Law Division, Atlantic County, Indictment No. 23-07-
1607.

Peter T. Blum, Assistant Deputy Public Defender,
argued the cause for appellant (Jennifer N. Sellitti,
Public Defender, attorney; Peter T. Blum, of counsel
and on the briefs).

Linda A. Shashoua, Assistant Prosecutor, argued the
cause for respondent (William Reynolds, Atlantic
County Prosecutor, attorney; Linda A. Shashoua, of
counsel and on the brief; Courtney Cittadini, Section
Chief, on the brief).

The opinion of the court was delivered by

JACOBS, J.A.D.

This appeal presents a question of first impression: whether a trial judge may require a jury to reach unanimity before requesting playback of trial testimony. We conclude the trial judge misapplied her discretion by requiring juror unanimity before further considering an initial request for testimony playback. We therefore vacate defendant's convictions for fourth-degree operating a motor vehicle during a period of license suspension, vacate the sentence imposed, and remand for a new trial.

I.

On February 14, 2018, Officer David LaSassa of the Galloway Township Police Department conducted a traffic stop of defendant's pickup truck carrying furniture in its bed. A rope used to secure the furniture was trailing along the roadway approximately twenty yards behind the vehicle. Officer LaSassa asked for defendant's driver's license, but defendant informed the officer he did not have one. Before he could complete the stop, the officer was dispatched to another call. Later, Officer LaSassa confirmed with dispatch defendant's driver's license had been suspended. He issued three citations, which were mailed to defendant at the last known address associated with his license, charging: (1) improper loading of a vehicle so as to spill, N.J.S.A.

39:4-77; (2) driving without a license, N.J.S.A. 39:3-10; and (3) operating a motor vehicle while a license is suspended or revoked, N.J.S.A. 39:3-40.

On July 18, 2023, an Atlantic County grand jury indicted defendant for fourth-degree operating a motor vehicle during a period of license suspension, N.J.S.A. 2C:40-26(a), and fourth-degree operating a motor vehicle during a period of license suspension based on a second violation, N.J.S.A. 2C:40-26(b). The fourth-degree charges were tried before a jury, and the traffic violations were tried before the trial judge.

At trial in April 2024, the State presented two witnesses, Officer LaSassa and Brian Beke, a Driver Improvement Analyst at the New Jersey Motor Vehicle Commission (MVC). Defendant did not testify or call any witnesses.

Officer LaSassa testified regarding the motor-vehicle stop. Beke testified about defendant's driver's abstract, which showed multiple prior suspensions and convictions for driving under the influence and driving while suspended. A redacted version of the eight-page abstract was admitted into evidence without objection. Beke explained that on May 14, 2009, defendant's driving privileges were suspended for two years because defendant had operated a vehicle while under the influence of liquor or drugs on March 29, 2009. On September 3, 2010, defendant received two additional violations, for

3

operating a vehicle while under the influence of alcohol or drugs and for operating a vehicle with a suspended license. On February 2, 2011, the municipal court suspended defendant's license for a ten-year period, beginning on January 5, 2011, for the operating-while-under-the-influence violation. Beke explained the MVC receives confirmation of suspensions from the court and records them. Then "the system generates the notice and mails it out" to the driver's last known address.

After Beke testified, the judge instructed the jury not to speculate about redactions to defendant's driver's abstract and to consider only the evidence presented. In her final charge to the jury, the judge also gave a limiting instruction that the evidence regarding permissible use of prior motor-vehicle violations was admitted "for the specific purpose of establishing an element of the present offense."

As reflected in the trial transcript, the court recessed at 3:10 p.m. for jury deliberations. The court reconvened at 3:58 p.m. in response to a note from the jury requesting a transcript of the trial. Without first reading the note on the record or conferring with counsel as to an appropriate response, the judge had the jury returned to the courtroom. The judge responded to the jury's request:

> [THE COURT Reading the note:] "Can we have [c]ourt transcripts?" There isn't a [c]ourt transcript, so

4

what you are allowed to do, and what we may do for you, is we can replay portions of the testimony for you, okay? In order for me to do that, we don't replay the whole trial. So what I need is that <u>unanimously</u> that you all go back into the jury room, and you're going to send me out another note of what portions of the testimony you would like to have replayed, okay? So it would be best if you told me which witness and what portions.

And I need it to be something that's <u>unanimous</u>, that <u>you all agree</u> that that's the portions you need. And we can't replay . . . we don't . . . we would prefer not to replay a two-hour trial, or two-and-a-half[-]hour trial. So you know, when I say portions, you know, you can . . . limit it by subject matter or time or whatever, whatever you have that can tell me so I can identify in the [c]ourt's record what it is that you're looking for, okay?

So you're going to go back into the jury room. Send me out another note through the jury officer, and then we will determine where we go from here, okay?

Counsel, anything for the record?

[PROSECUTOR]: Nothing from the [S]tate.

[DEFENSE COUNSEL]: No, Your Honor.

THE COURT: Thank you.

(Jury exits the courtroom)

[(Emphasis added).]

The jury resumed deliberations at 4:02 p.m. without issuing a note responsive to the judge's instruction. Instead, at 4:47 p.m., the jury

communicated it had reached a verdict, convicting defendant of both fourth-degree charges. The judge found defendant guilty of the traffic violations. Defendant moved for a judgment of acquittal, arguing insufficient evidence was adduced to prove he had known his license was suspended. The judge denied the motion, finding the State's evidence sufficient. At sentencing, the judge imposed an aggregate fifteen-month term of imprisonment with a 180-day parole disqualifier, and additional fines and penalties on the traffic violations.

Defendant appeals, raising four arguments:

POINT I

THE DRIVING-WHILE-SUSPENDED CONVIC-TIONS SHOULD BE DISMISSED BECAUSE DOCUMENTS SHOWING ONLY THAT A PRIOR COURT HAD SUSPENDED DEFENDANT'S LICENSE AND THAT A CONFIRMATION HAD BEEN MAILED TO A REDACTED ADDRESS DID NOT SUFFICIENTLY PROVE THAT DEFENDANT KNEW HIS LICENSE WAS SUSPENDED. U.S. CONST. AMEND. XIV; N.J. CONST. ART. 1, ¶ 1.

POINT II

DEFENDANT SHOULD HAVE A NEW TRIAL ON THE FOURTH-DEGREE CHARGES BECAUSE A LARGE QUANTITY OF IRRELEVANT PRIOR BAD ACTS WERE ADMITTED THROUGH HIS DRIVER'S ABSTRACT. U.S. CONST. AMENDS. XIV; N.J. CONST. ART. 1, ¶ 1. ([N]ot raised below).

POINT III

DEFENDANT SHOULD HAVE A NEW TRIAL ON THE FOURTH-DEGREE CHARGES BECAUSE THE COURT IMPROPERLY INSTRUCTED THE DELIBERATING JURORS THAT THEY HAD TO BE UNANIMOUS IN REQUESTING A PLAY BACK. U.S. CONST. AMENDS. XIV; N.J. CONST. ART. 1, ¶ 1. ([N]ot raised below).

POINT IV

DEFENDANT'S ILLEGAL SENTENCE SHOULD BE CORRECTED BY MERGING THE LESSER TRAFFIC VIOLATIONS FOR DRIVING WHILE SUSPENDED AND DRIVING WITHOUT A LICENSE INTO THE GREATER FOURTH-DEGREE CONVICTIONS FOR DRIVING WHILE SUSPENDED. U.S. CONST. AMENDS. V, XIV; N.J. CONST. ART. 1, ¶¶ 1, 11. ([N]ot raised below).

II.

Because we are persuaded defendant is entitled to a new trial based on the judge's instruction that unanimity was required for a playback of testimony, we address that argument first.

In the absence of an objection to the judge's instruction, our review is limited to plain error. See R. 2:10-2 ("[T]he appellate court may, in the interests of justice, notice plain error not brought to the attention of the trial or appellate court."). "If the defendant does not object to the charge at the time it is given, there is a presumption that the charge was not error and was unlikely to prejudice the defendant's case." State v. Singleton, 211 N.J. 157, 182

(2012) (citing State v. Macon, 57 N.J. 325, 333-34 (1971)). "[P]lain error requires demonstration of legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." Id. at 182-83 (quoting State v. Chapland, 187 N.J. 275, 289 (2006)) (internal quotation marks omitted). "Furthermore, an 'alleged error is viewed in the totality of the entire charge, not in isolation,' and 'any finding of plain error depends on an evaluation of the overall strength of the State's case.'" State v. Cotto, 471 N.J. Super. 489, 545 (App. Div. 2022) (quoting State v. Nero, 195 N.J. 397, 407 (2008)).

In State v. Miller, Chief Justice Rabner, writing for a unanimous Court, addressed how trial judges should respond to a jury's request for testimony playback:

> Juries routinely ask to review trial testimony when they deliberate. Absent "some unusual circumstance," those requests should be granted. State v. Wolf, 44 N.J. 176, 185 (1965). The requests are a clear sign that the evidence sought is important to the deliberative process. They also reflect the reality that jurors cannot be expected to have perfect recall of every bit of evidence introduced during a trial. As a result, the "true administration of justice" requires that judges typically accede to jury requests to review testimony. Ibid.; see also State v. Wilkerson, 60 N.J. 452, 460 (1972). Judges should not decline a request

simply because it "would take time." <u>Wolf</u>, 44 N.J. at 186.

[205 N.J. 109, 119-20 (2011) (citations reformatted).]

In <u>Wolf</u>, the "unusual circumstance[s]" for denying a jury's request for testimony readback were discussed in the context of a trial judge's instruction for a jury "to rely upon their recollection as to what the questioning of [a witness] had disclosed of the subject matter" in question.[1] 44 N.J. at 184. In reversing the defendant's conviction for murder and "under the somewhat bizarre [procedural] circumstances of the case," the <u>Wolf</u> Court held the trial court had unfairly exercised its discretion in "simply advising [jurors] to rely upon their recollection of the cross-examination of" a witness rather than grant the defense's request to reopen the case and allow additional testimony from a co-participant regarding the contents of letters that were the subject of the jury's note issued during deliberation. <u>Id.</u> at 184-85. The Court opined:

---

[1] The term "readback" was not used in <u>Wolf</u>. Instead, the Court referred to "reading of . . . testimony." <u>Wolf</u>, 44 N.J. at 185. The term "readback" was used in <u>Miller</u> to describe the practice of court reporters reading back testimony. <u>State v. Miller</u>, 205 N.J. 109, 122 (2011). With the universal use of recording technology, we use the term "playback." This transition was anticipated by the 1991 Supreme Court Committee on Court Reporting (Stenographic & Electronic), which recommended in its Final Report that courtrooms be equipped with videotape systems to create the record and that videotape recording be extended to additional courts as official court reporters voluntarily left state service. <u>Miller</u>, 205 N.J. at 120.

It should be remembered that the reading of all or part of the testimony of one or more of the witnesses at a trial, criminal or civil, at the specific request of the jury during their deliberations is discretionary with the trial court. . . . When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If under our system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement. It must be assumed also that if they had any similar doubts or disagreements about statements of other witnesses they would seek the same remedy. . . . The matter must be left in the sensitive discretion of the trial judge. . . . But generally where the testimony is reasonably available, a judge should not refuse to grant a jury request to have it read merely because the reading would take time. In these days when the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case both before and during the trial, there is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom.

[Id. at 185-86 (citations omitted).]

10

A-0045-24

As the parties note in their merits briefs, there is no New Jersey precedent directly addressing whether a jury's request for playback be unanimous, consensus-based, or the wish of a single juror. Thus, although we read the Court's holdings in <u>Miller</u> and <u>Wolf</u> to recognize a trial judge's discretion to inquire whether the scope of witness playback pertains to "one or more of the witnesses," it must concomitantly "be assumed [jurors] have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement." <u>Wolf</u>, 44 N.J. at 185. Neither <u>Miller</u> nor <u>Wolf</u> suggests a trial judge has the discretion to impose unanimity as a condition to narrow the scope of playback. To endorse the exercise of such discretion would contravene the Court's recognition that "the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case . . . [in which] there is no just reason for insisting that laymen jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom." <u>Id.</u> at 186.

Based on the record, it is unclear what led the judge to impose unanimity as a condition for witness playback or why the judge did not simply play back the testimony. The trial was brief. From the record, which includes time stamps, Officer LaSassa's and Beke's entire testimony lasted a combined total of approximately seventy-nine minutes. Considering this limited time frame, it

11

was not unreasonable for the jury to seek playback of trial testimony in its entirety.

As noted, the jury submitted its request shortly before 3:58 p.m. The judge did not allocate time to first review the question with counsel. The record does not reveal whether the jury returned a verdict without responding to the judge's instruction because it believed unanimity was required or because it no longer needed the requested playback. However, the risk that a single juror was deprived of the opportunity to hear the testimony again undermines our confidence in the deliberative process and the verdict. Moreover, the trial judge's unanimity rule was unsupported by law. Thus, the error was not harmless as it had the clear capacity to produce an unjust result. See R. 2:10-2.

We reach this conclusion recognizing that the confidentiality of jury deliberations prevents us from knowing whether the verdict would have differed had the jury's request been granted. What we do know is that the jury returned its verdict forty-five minutes after being told its request for playback required unanimity, coincident with the end of the court day. The time and nature of these proceedings, permit the inference that concern for exigency may have played a role in the jury's verdict.

A-0045-24

Although this was a brief trial, brevity is not a measure of a case's importance. The State's proofs, however facially sufficient, were properly subject to the jury's scrutiny, as in every case regardless of duration or gravity. These considerations reinforce our conclusion that the judge's instruction improperly impeded the jury's fundamental function, prejudicially affecting defendant's substantial rights and possessing the clear capacity to produce an unjust result. See R. 2:10-2.

We take this opportunity to outline the procedure trial judges should follow in responding to a jury question. On receiving a question, the judge should first convene counsel to the courtroom, read the question into the record, and state the proposed response outside the jury's presence. Before the jury is brought into the courtroom, counsel should be afforded an opportunity to present their respective positions on the record as to how the judge should respond to the jury's question. After considering counsel's positions, the judge should state the intended response. Consistent with Rule 1:7-2, counsel should then be afforded the opportunity to state whether they agree or object to the proposed response and any grounds for objection. Rule 1:7-2 provides:

> For the purpose of reserving questions for review or appeal relating to rulings or orders of the court or instructions to the jury, a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires

the court to take or the party's objection to the action taken and the grounds therefor. . . .

This procedure ensures counsel has a meaningful opportunity to freely express their position without concern that disagreement with the court's proposed response must be voiced either in the presence of the jury or at a sidebar whose purpose is made evident when, as occurred here, in the jury's presence, the judge asks, "Counsel, anything for the record?"

We reaffirm the established principle that playback requests ordinarily should be granted. Although we do not decide here between whether a playback request must reflect the consensus of the jury or may be made at the request of a single juror, we see no reason to disagree with defendant's position that "[i]f even one deliberating juror want[s] clarification of the testimony, that juror should . . . [be] allowed to make a request of the judge," particularly given the unanimity required of jury guilty verdicts.

III.

For the sake of completeness, we address defendant's remaining points. We see no merit in defendant's first argument that his driving-while-suspended convictions should have been dismissed because there was insufficient proof to establish defendant knew his license was suspended.

"A court shall enter an order for a judgment of acquittal only 'if the evidence is insufficient to warrant a conviction.'" State v. Brown, 463 N.J.

14

Super. 33, 47 (App. Div. 2020) (quoting R. 3:18-1). "In assessing the sufficiency of the evidence on an acquittal motion, we apply a de novo standard of review." State v. Jones, 242 N.J. 156, 168 (2020) (quoting State v. Williams, 218 N.J. 576, 593-94 (2014)). "A jury verdict is entitled to considerable deference and should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice." Hayes v. Delamotte, 231 N.J. 373, 385-86 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011)) (internal quotation marks omitted). "A trial court therefore grants a motion for a new trial only 'if, having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses, it clearly and convincingly appears that there was a miscarriage of justice under the law.'" Id. at 386 (quoting Crawn v. Campo, 136 N.J. 494, 511-12 (1994)).

Regarding defendant's knowledge of his driver's license suspensions, "[i]t is well known that mental state is not conducive to demonstration through direct evidence." State v. Williams, 190 N.J. 114, 124 (2007). "In criminal prosecutions, proof of a defendant's mental state often must be 'inferred from the circumstances and the jury must make its determination by both the act and

15

by the surrounding circumstances.'" Ibid. (quoting State v. Rowe, 838 S.W.2d 103, 111 (Mo. Ct. App. 1992)). "The key to circumstantial evidence generally, and as applied to state-of-mind questions specifically, is whether it bears a logical connection to the disputed fact." Ibid.

Defendant contends mailings to his last known address were insufficient to support an inference of his knowledge of suspension "merely because the motor vehicle authority had mailed a notice to the last address on file." He posits this "makes sense because people commonly change addresses, spend time away from home, overlook a letter, or scan a letter quickly and miss its significance." Defendant maintains there is no evidence he actually received any of the letters, as no evidence was presented regarding the address to which the letters were mailed or where he was residing at the time they were sent. Moreover, defendant asserts there was no evidence "that [he] was present in municipal court -- much less evidence of what he was told if he was present." We reject these arguments.

Defendant's driver's abstract provides evidence of his past convictions and circumstantial evidence from which the jurors could properly infer defendant was in court and aware of the suspension of his license. Similarly, the judge correctly found the abstract leads to a logical inference that defendant was aware of his suspended license as his convictions would have

16

been entered in the court, and defendant would have been given notice of his suspensions at that time.

Defendant's second contention—that "a large quantity of irrelevant prior bad acts were admitted through his driver's abstract" (capitalization modified and boldface omitted)—has merit, but it does not provide a basis to vacate his convictions. A review of the record demonstrates defense counsel acquiesced to redacting defendant's eight-page driver's abstract and did not make a request to eliminate what he now argues were excessive redacted pages.

Defendant argues the court's failure to sua sponte redact those heavily redacted pages constituted reversible error because their sheer quantity suggests the jury was left to speculate about defendant's conviction for other bad acts. First, we observe that "[g]enerally, failure to 'object or otherwise preserve an issue for appeal at the trial court level' limits appellate review to a plain error inquiry." State v. G.E.P., 243 N.J. 362, 389 (2020) (quoting State v. Santamaria, 236 N.J. 390, 404 (2019)). Because counsel did not object to the redactions, we analyze this argument under the plain error standard. Plain error, if any, was invited through counsel's explicit strategy regarding a modified charge on the subject of credibility. See State v. A.R., 213 N.J. 542, 561 (2013) ("[I]f a party has 'invited' the error, he is barred from raising an objection for the first time on appeal.").

17

Second, as the State argues, "[t]he removal of prior bad acts cannot constitute the admission of prior bad acts, particularly where the jury was properly instructed not to speculate about redactions and cautioned against using prior motor vehicle violations as evidence or propensity." The judge explicitly instructed jurors not to speculate about the redactions:

> You may receive some items of evidence that have been redacted in various ways. There are many reasons why such redactions are required. You should not speculate as to what those redactions entail or why they were made. The document as it currently appears is the only evidence for your consideration.

It is presumed the jury is capable of following, and has indeed followed, the trial court's instructions. State v. Herbert, 457 N.J. Super. 490, 503 (App. Div. 2019). Moreover, because defense counsel requested redactions in the form presented to the jury, to the extent there may have been plain error, it was invited and not subject to reversal. A.R., 213 N.J. at 561. Under these circumstances, we perceive no error "clearly capable of producing an unjust result." R. 2:10-2.

Notwithstanding the absence of legal error and issuance of limiting instructions, we remain concerned about the prejudicial impact that multiple pages of entirely redacted material may have had on the jury in its deliberations. Should this matter be retried, we suggest the court explore with

18

counsel alternative means of adducing and presenting to the jury relevant portions of defendant's driver's abstract that are not otherwise in dispute.

Defendant's remaining argument is that his violations for driving while suspended and driving without a license should merge with his fourth-degree convictions for driving while suspended. He claims "the traffic violation for driving while suspended was a lesser included offense of the two fourth-degree driving-while-suspended convictions." Defendant contends the fourth-degree driving-while-suspended offenses "explicitly incorporate the traffic violation and add elements regarding . . . defendant's prior record to raise the violation to indictable charges."

Defendant also posits the judge should have merged the convictions for the traffic violation of driving while suspended and driving without a license, reasoning that because a suspended driver's license is taken by the court, a person driving while suspended must necessarily be driving without a license. He argues "both charges are forms of driving without authorization, and the charge of driving without a license is included in the more aggravated charge of driving while suspended." Defendant notes that "driving while suspended has more severe penalties" than driving without a license, confirming that driving while suspended "is essentially a more aggravated form of driving without a license." Defendant therefore seeks vacatur of "the traffic violations

19

for driving while suspended and driving without a license," and merger of those violations with "the convictions for fourth-degree driving while suspended."

"At its core, the doctrine of merger is based on the precept that 'an accused [who] committed only one offense . . . cannot be punished as if for two.'" State v. Herrera, 469 N.J. Super. 559, 565 (App. Div. 2022) (alteration and omission in original) (quoting State v. Davis, 68 N.J. 69, 77 (1975)). "Although our Supreme Court has 'not determined whether that prohibition rests on principles of double jeopardy, due process or some other legal tenet,' it is beyond dispute that 'merger implicates a defendant's substantive constitutional rights.'" Ibid. (quoting State v. Cole, 120 N.J. 321, 326 (1990)).

> When the meaning of a statute is not at issue, we review a judge's sentencing decision under an abuse of discretion standard. See State v. Fuentes, 217 N.J. 57, 70 (2014). This case, however, focuses on an interpretation of the statutes that define the two crimes for which defendant was convicted and the statutory framework for deciding whether those convictions merge. We therefore apply a de novo review to "discern and effectuate the legislative intent underlying the statutory provision[s] at issue." State ex rel. K.O., 217 N.J. 83, 91-92 (2014); see also State v. Vargas, 213 N.J. 301, 327 (2013) (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).
>
> [Ibid. (last alteration in original) (citations reformatted).]

"N.J.S.A. 2C:1-8(a) provides general guidance on when offenses merge."

Id. at 566.

> a. . . . When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
>> (1) One offense is included in the other, as defined in subsection d. of this section;
>>
>> . . . .
>>
>> (4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct.
>
> . . . .
>
> d. Conviction of included offense permitted. A defendant may be convicted of an offense included in an offense charged whether or not the included offense is an indictable offense. An offense is so included when:
>
>> (1) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged . . . .
>
> [Ibid. (omissions in original) (quoting N.J.S.A. 2C:1-8(a)).]

The State agrees defendant's traffic violations should have merged with the criminal convictions but observes merger is not mandatory because the merger statute applies only to criminal offenses, not motor vehicle violations.

A-0045-24

Nevertheless, the State acknowledges the two traffic violations should have merged with the criminal convictions to avoid double jeopardy, while cautioning that merger is appropriate only when the elements of the offenses and the supporting evidence correspond. The State further notes that mandatory penalties for merged violations survive merger, even if one violation is fully encompassed by another. Thus, penalties for driving while suspended, N.J.S.A. 39:3-40(c) and (d) and N.J.S.A. 39:3-10 survive merger, and the aggregate term should remain unchanged because the judge sentenced defendant concurrently.

We conclude the traffic violations should have merged with the criminal convictions, but penalties for both statutes should survive merger. N.J.S.A. 2C:40-26(a) and (b), criminalizes driving during license suspension for certain offenses and was enacted to address recidivist impaired drivers. As the Supreme Court has observed:

> Although N.J.S.A. 39:3-40 and N.J.S.A. 2C:40-26 are not found within the same title of the Code, they operate in tandem to establish escalating consequences for the same conduct -- driving while suspended -- based on a defendant's number of past DWI or Refusal convictions. That is exactly what the DWI statute accomplishes with its enhanced sentencing scale. There is no principled distinction between the two sentencing schemes.
>
> [State v. Konecny, 250 N.J. 321, 337 (2022).]

A-0045-24

Vacated and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M. C. Hanley

Clerk of the Appellate Division

A-0045-24